

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 FEB 21   PM 12: 25

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KENNETH BEVLEY** | * | **CIVIL ACTION** |
| **v.** | * | **NUMBER: 00-0007** |
| **UNITED STATES OF AMERICA** | * | **SECTION: "T" (5)** |
| | * | |

\*     \*     \*

## REPLY MEMORANDUM TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, ALTERNATIVELY SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Defendant, the United States of America, files this Reply Memorandum in response to arguments asserted by Plaintiff in his Memorandum in Opposition to the Defendant's Motion to Dismiss, Alternatively Summary Judgment ("Opposition Memorandum").

Plaintiff opposes defendant's motion on two grounds. First, Plaintiff argues that the discretionary function exception is inapplicable in cases involving low level employees, and second, Plaintiffs maintains that a due care requirement exists in the second clause of subsection (a) of the discretionary function exception. *See* Opposition Memorandum, p. 8. Both of Plaintiff's arguments

1

Fee _____
Process _____
X Dktd _____
CtRmDep _____
Doc.No. _____

are contrary to the applicable case law, and neither of Plaintiff's arguments is supported by controlling legal authority.

Plaintiff is asking this court to find that the defendant violated the Federal Tort Claims Act ("FTCA") by its "negligent refusal to provide required medical care and treatment to Plaintiff for his serious, persistent, and extremely painful hemorrhoid condition". *See* Opposition Memorandum, p. 2. Plaintiff contends that his medical condition is a material fact in dispute. However, it has been established and is part of the record that at no time did Plaintiff's request for hemorrhoid surgery constitute a serious medical condition. [1]

As noted by the court in Kenneth Bevley v. Charles C. Foti, Jr. USDC, EDLA, CA No. 97-3156 "T"(5) ("Bevley 1997"), an examining doctor's referral of a prisoner to a particular clinic located outside a correctional facility, such as a hospital's surgical clinic, does not *ipso facto* mean that the prisoner is suffering from a serious problem warranting immediate specialized medical

---

[1] Plaintiff attached excerpts from Dr. Bert Ducote's deposition in his Opposition Memorandum. In his deposition, Dr. Ducote, Plaintiff's treating physician, responds to the questions asked by Defendant's attorney as follows:

Q:    Doctor, a hemorrhoidectomy is a surgical procedure, is it not?
A:    That's correct.
Q:    Would it be fair to say or unfair to say that it's therefore an emergency situation and must be done promptly?
A:    Not a hemorrhoidectomy, in my opinion.
Q:    So you don't think that's something that's an emergency?
A:    No.
Q:    It can wait.
A:    It can wait.

Deposition of Dr. Bert Ducote, p. 15-16, Opposition Memorandum, Exhibit 6.

2

attention. <u>Bevley 1997</u>, Rec. Doc. 99, Order and Reasons, p. 6-7. [2]    The Court based on its experience adjudicating prisoners' medical requests has taken judicial notice of the fact that such referrals are not unusual when examinations take place in a prison setting where medical resources may be limited, and further, unless designated as serious or as an emergency, such referrals are generally not handled on an expedited basis. <u>Id</u>.

Offered in support is Dr. Ducote's affidavit in which he attests that in August, 1997, when he referred plaintiff to the surgical clinic and in accordance therewith, TPJ nurse requested authorization from the USMS, plaintiff's medical condition "did not constitute a serious medical condition." [3]   Similarly, on September 5, 1997, when he again referred plaintiff to the surgical clinic, Dr. Ducote attests that plaintiff's condition "did not constitute a serious medical condition." [4] Further, Dr. Ducote attests that a hemorrhoidectomy, the surgery ultimately performed upon plaintiff, "is considered an elective procedure," not a necessary one warranted in response to a serious medical situation. [5]

Corroborating Dr. Ducote's assessment of plaintiff's condition was the treatment plaintiff received from the emergency room physician on October 23, 1997. *See* Exhibit A, p. 7. Following his examination, the emergency room doctor did not, as would be expected in response to a serious medical condition, expedite matters for the purpose of having plaintiff seen at the surgical clinic to

---

[2]  Attached as Exhibit A.

[3]  *See* Rec. Doc. 10, Exhibit 2A, October 8, 1999, Affidavit of Dr. Bert Ducote, ¶ 6, attached as Exhibit B.

[4]  *See* Rec. Doc. 10, Exhibit 2A, October 8, 1999, Affidavit of Dr. Bert Ducote, ¶ 7, attached as Exhibit B.

[5]  *See* Rec. Doc. 10, Exhibit 2A, October 8, 1999, Affidavit of Dr. Bert Ducote, ¶ 5, affidavit of Dr. Bert Ducote.

schedule a hemorrhoidectomy as soon as possible. Id. Instead, like Dr. Ducote, the emergency room physician merely referred plaintiff to the surgical clinic, and he prescribed over-the counter medication, specifically, Preparation H, along with sitz baths and a soft diet. Id.

The USMS policies and procedures respective to inmates being seen at outside medical facilities are based not only on budgetary reasons, but on security concerns as well. [6]  It has been established as part of this record that each and every instance that Ard was contacted by the TPJ medical staff, he was told that Plaintiff's medical condition and his need for a hemorrhoidectomy was not an emergency situation and did not constitute a serious medical condition. *See* Rec. Doc. 17, Order and Reasons, p. 2., Exhibit A, Exhibit B, and Exhibit C. This is not a material fact in dispute.

Based on TPJ's medical personnel's representation of Plaintiff's medical condition and after considering the USMS policies regarding prisoners medical care, Marshal Ard, acting on behalf of USMS, decided to deny Plaintiff's request. This exercise of judgment was grounded in USMS' policies not to approve prisoner's medical requests that were not medically necessary based on budgetary and security concerns since USMS prisoners are generally pre-trial detainees and only in USMS' custody for a short period of time. This is the type of policy grounded decision necessary for governmental function and is contemplated by the discretionary function exception of the FTCA. Therefore, Plaintiff's claims against the United States should be dismissed.

---

[6] *See* Motion to Dismiss, Exhibit A, ¶ 3; Rec. Doc. 10, October 8, 1999, Affidavit of William Ard, ¶5, attached as Exhibit C.

4

I.   **DISCRETIONARY FUNCTION EXCEPTION APPLIES TO THE ACTS OF SUBORDINATE GOVERNMENT EMPLOYEES CARRYING OUT THE OPERATIONS OF THE GOVERNMENT IN ACCORDANCE WITH ITS DECISIONS**

Defendant suggests that the discretionary function exception should only apply to decisions directly made by governmental executives or administrators that address major disasters or natural catastrophes.[7] *See* Opposition Memorandum, p. 8-10.  However, the Supreme Court has held that,

> the 'discretionary function or duty' that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities.  It also includes determinations made by executives or administrators . . . Where there is room for policy judgment and decision there is discretion.  It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable.

U.S. v. Varig,  467 U.S. 797, 811 (1984) (*citing* Dalehite, 467 U.S. at 35-36).

Otherwise, the exception would be largely meaningless because most such actions are executed by subordinates acting at the direction of their superiors. Lindsey v. U.S., 778 F.2d 1143, 1145 (5th Cir. 1985)(In reversing the district court, the Fifth Circuit ruled that the Patent and Trademark Office's decision to deny plaintiff's patent application was protected by the discretionary function exception

---

[7]Contrary to Defendant's argument that Congress did not intend to relieve the government from liability for common law tort in passing the discretionary function exception to liability under the FTCA, the Supreme Court has explained that,

> while Congress desired to waive the Government's immunity from actions for injuries to person and property occasioned by the tortious conduct of its agents acting within their scope of business, (citations omitted) it was not contemplated that the Government should be subject to liability arising from acts of a governmental nature or function.

Dalehite v. U.S., 356 U.S. 15, 27 - 28 (1953).

The Supreme Court further stated that "[o]ne only need read § 2680 in its entirety to conclude that Congress exercised care to protect the Government from claims, however negligently cause, that affected the governmental functions." Dalehite, 356 U.S. at 32.

because the decision to deny depended on the balancing of public policy considerations.)

It is the policy of USMS to only approve pre-trial prisoners surgical procedures where the surgery requested is a medical necessity and constitutes a serious medical condition. Approval need not be sought for a medical emergency. Marshal Ard, the official acting on behalf of the USMS, applied this policy when denying Plaintiff's request for hemorrhoid surgery. Plaintiff's request for hemorrhoid surgery was not characterized by Dr. Ducote or the TPJ nurse as a medically necessary procedure or a serious medical condition. *See* Exhibit B, Affidavit of Dr. Ducote.

USMS has the unique role of overseeing the incarceration of prisoners while they await disposition of their criminal cases. Decisions regarding the transport of prisoners and release of public funds for the benefit of prisoners' medical requests are discretionary to the USMS and its officials that carry out its policies. These functions, which involve budgetary concerns and issues regarding the safety of officials and the public, should not to be taken lightly. Each time a prisoner is transported outside the facility, public money is expended and there is always a risk that a breach in security can occur. The policies of the USMS regarding the approval for outside medical treatment of prisoners may be simplified by Plaintiff because he is requesting one hemorrhoid surgery. However, USMS in implementing its policies regarding prisoners medical care must consider the impact of the expense and risk of this type outpatient treatment that is not deemed a serious medical condition multiplied by the millions of requests by other prisoners for other non-serious or elective medical treatment. Policies that flow from the budgetary and public safety concerns that are part of the governmental function of incarcerating pre-trial detainees, such as the plaintiff, are the types of discretionary decisions that are contemplated for protection from tort suit. USMS' policy not to approve surgery requests for elective or non-serious medical condition is a necessary discretionary function of this governmental entity. Such decisions are not actionable under the FTCA.

6

## II.  IT IS WELL SETTLED THAT THE SECOND CLAUSE OF THE DISCRETIONARY FUNCTION EXCEPTION CONTAINS NO DUE CARE REQUIREMENT [8]

The discretionary function exception preserves governmental immunity from suit under the

FTCA for

> [a]ny claim **based upon** an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such state or regulation be valid, **or based upon** the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a) (emphasis added)

This subsection contains two clauses beginning with "based upon" and separated by the

disjunctive "or." Buchanan v. U.S., 915 F.2d 969, 970-971 (1990). These clauses set forth two

separate exceptions to the FTCA. Id. The first clause, exempting actions mandated by statute or

regulation applies only if the actor has exercised due care. Id. The second clause, exempting action

based on a discretionary function, contains no due care requirement. Id.

However, if this Court chooses to impose a due care standard, Ard exercised due care

when he denied Defendant's hemorrhoid surgery request. See affidavit of Dr. Ducote. The record

reflects that Marshal Ard at no time overruled the requests of Plaintiff's treating physician as

incorrectly stated by Plaintiff in his Opposition Memorandum. Dr. Ducote never characterized

---

[8]    Defendant incorrectly cites Hathaley v. U.S, 351 U.S. 173 (1956) for the proposition that the second clause contains a due care requirement. See Opposition Memorandum, p. 11-12. The issue in Hathaley was the agents enforcement of the federal range law. Id. at 181. The court noted that the first portion of section (a) could not apply, since the government agents were not exercising due care in their enforcement of the federal law. Id. The court then went on to note that the second portion of section (a) did not apply to exempt the government from liability since the wrongful trespasses involved did did not involve discretion on the part of the agents. Id.

7

Plaintiff's request for hemorrhoid surgery as a serious medical condition, since as attested by Dr. Ducote, hemorrhoid surgery is an elective procedure, and at no time did Dr. Ducote suggest to Marshal Ard that Plaintiff's request constituted a serious medical condition. *See* Exhibit B.

## III.    CONCLUSION

Sovereign immunity precludes tort actions against the United States which come within the ambit of the discretionary function exception to the FTCA. The conduct of Marshal Ard and USMS are well within that sphere  Accordingly, this Court lacks subject matter jurisdiction, and the United States urges this Honorable Court to dismiss Plaintiff's FTCA claim against the United States.


Respectfully submitted,

EDDIE J. JORDAN, JR.
UNITED STATES ATTORNEY


ORELIA E. MERCHANT (26086)
Special Assistant United States Attorney
Hale Boggs Federal Building
501 Magazine Street, 2nd Floor
New Orleans, Louisiana  70130
Telephone:  (504) 680-3163

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been forwarded to all counsel of

record by facsimile and by mailing the same in the United States Mail, properly addressed and postage

prepaid on  November 28, 2000.

ORELIA E. MERCHANT
Special Assistant United States Attorney



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT LA

2000 MAY 16  P 2: 51

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

*

| | | |
|---|---|---|
| **KENNETH BEVLEY** | | **CIVIL ACTION** |
| **VERSUS** | * | **NO: 97-3156** |
| **CHARLES C. FOTI, JR., ET AL** | * | **SECTION: "T"(5)** |

## ORDER AND REASONS

This civil rights action is before the court pursuant to motions for summary judgment filed

on behalf of the remaining defendants, Randy Pinion, Warden of the Tangipahoa Parish Jail, and

William Ard, "Jail Liaison Officer" between the United States Marshals Service ("USMS") and

the Tangipahoa Parish Jail ("TPJ") during the pertinent time period.[1] For the following reasons,

IT IS HEREBY ORDERED that the above-referenced motions for summary judgment are

GRANTED.[2]

---

[1]    *See* enumerated paragraph two of Ard's affidavit attached as exhibit B to his motion
for summary judgment.  The instant action, with respect to USMS employee William Ard, is
limited to plaintiff's *"Bivens*/individual capacity claims."  *See* this court's January 27, 1999
minute entry, doc. # 51.  In light of plaintiff's proceedings under the Federal Tort Claims Act
("FTCA"), plaintiff's "official capacity claim against defendant Ard, his pendent state law tort
claim against defendant Ard, and his claim against the United States Marshal Service...[were]
dismissed without prejudice.  *See* this court's August 4, 1999 minute entry, doc. # 76.

[2]    The parties in the above-captioned matter have consented to proceed before the
undersigned magistrate judge pursuant to the provisions of 28 U.S.C. § 636(c)(1).  *See* rec., doc.
# 54.

DATE OF ENTRY
MAY 1 7 2000

Fee _____
Process _____
X Dktd _____
CtRmDep _____
Doc. No. _____



GOVERNMENT
EXHIBIT

A

## I. UNDISPUTED FACTS [3]

Plaintiff, Kenneth Bevley, is presently an inmate in the custody of the United States Bureau of Prisons. During the pertinent time period, plaintiff was incarcerated at Tangipahoa Parish Jail as a federal pretrial detainee. On August 6, 1997, plaintiff submitted a request form for medical attention, complaining of hemorrhoid pain. On August 14, 1997, plaintiff was examined by Dr. Bert Ducote who diagnosed plaintiff as suffering from hemorrhoids, prescribed medication, and referred plaintiff to the surgery clinic at Lallie Kemp Medical Center.

Under Article II(3) of an agreement between the TPJ and the USMS regarding the housing of federal prisoners, the TPJ agreed: "[T]o notify the U.S. Marshal as soon as possible of all emergency medical cases requiring removal of a prisoner from the facility and to obtain prior authorization for removal for all other medical services required." Accordingly, in response to Dr. Ducote's referral, TPJ nurse Deanie Brumfield sought authorization from USMS "Jail Liaison Officer" William Ard to transport plaintiff to the Lallie Kemp Medical Center's surgery clinic. On August 20, 1997, Ard denied authorization.

On August 28, 1997, plaintiff submitted another medical request form, complaining of rectal bleeding. On September 5, 1997, Dr. Ducote examined plaintiff, diagnosed that plaintiff

---

[3]     These undisputed facts were gleaned from the following sources: 1) Plaintiff's medical records, copies of which have been filed in the record; 2) enumerated paragraphs II, III, IV, V, VI, VII, and VIII of Pinion's Statement of Uncontested Material Facts; 3) Section III - Chronology of Events - paragraphs 2, 3, 4, 6, 7 and 8 of Plaintiff's Memorandum in Opposition to Defendant Warden Randy Pinion's Motion for Summary Judgement [sic]; and, 4) A copy of the pertinent portion of the agreement between the TPJ and the USMS, attached to plaintiff's Memorandum in Opposition to Defendant Warden Randy Pinion's Motion for Summary Judgement [sic] as exhibit A.

was suffering from external hemorrhoids, prescribed medication, and again referred plaintiff to the Lallie Kemp Medical Center's surgical clinic.  Nurse Brumfield again sought authorization which Ard denied.

In response to his medical complaints dated September 22, 1997 and October 6, 1997, plaintiff was examined by Dr. Ducote on September 22, 1997 and October 8, 1997, respectively. Pursuant to these two examinations, Dr. Ducote again prescribed medication in connection with plaintiff's hemorrhoid problem, but did not refer plaintiff to the Lallie Kemp Medical Center's surgery clinic.

On October 19, 1997, plaintiff filed another medical complaint.  On October 22, 1997, Dr. Ducote diagnosed that plaintiff had a thrombosed external hemorrhoid and deemed plaintiff's problem to be an emergency, thereby obviating the need for authorization from the USMS.[4]  The following day, plaintiff was examined by an emergency room doctor who prescribed Preparation H, sitz baths and a soft diet, and, like Dr. Ducote, referred plaintiff to the surgery clinic.

Pursuant to the above referral, plaintiff was scheduled to be seen at the surgery clinic on November 18, 1997.  Prior to that date, plaintiff was transferred into the custody of the United States Bureau of Prisons and incarcerated in a United States Penitentiary located in Beaumont, Texas.  A surgical evaluation was ultimately performed and in February, 1998, plaintiff underwent a hemorrhoidectomy.

---

[4]    As set forth *supra* at p. 2, under Article II(3) of the pertinent agreement, prior authorization from the USMS was not necessary before a federal prisoner was removed in response to an emergency medical situation.  Instead, TPJ officials were merely required to notify USMS officials of the removal.

3

## II. LAW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. *National Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support the essential elements of its claim. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 321-23 (1986)). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323.

Denial of medical care amounts to punishment and is actionable under 42 U.S.C. § 1983 when officials are deliberately indifferent to a prisoner's serious medical needs. *See Hare v. City of Corinth*, 74 F.3d 633, 648-49 (5th Cir. 1996); *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997) (citing *Estelle v. Gamble*, 429 U.S. 97, (1976)). A prisoner's disagreement with the course of medical treatment he received does not state a claim for indifference to serious medical needs. *Norton*, 122 F.3d at 291 (citing *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir. 1985)).

4

Furthermore, in order for an allegation of delayed medical treatment to state a viable claim under § 1983, the delay must have been caused by deliberate indifference and resulted in substantial harm to the plaintiff. *See Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993).

## III. ANALYSIS

Based upon the above undisputed facts, the court finds that TPJ officials, including defendant Pinion, were not deliberately indifferent to plaintiff's serious medical needs. On this same basis, a lack of deliberate indifference to plaintiff's serious medical needs, the court finds no individual liability on the part of USMS employee William Ard.[5]

Following every medical complaint submitted by plaintiff, he was promptly examined by a physician, specifically, Dr. Bert Ducote.[6] It was only in connection with his first two examinations of plaintiff, on August 14, 1997 and September 5, 1997, preceding his October 22, 1997 emergency designation, that Dr. Ducote referred plaintiff to Lallie Kemp Medical Center's

---

[5]    The purported basis for Ard's motion for summary judgment is his entitlement to qualified immunity. However, the focus of Ard's memorandum is not the qualified immunity test of: "(1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and, (2) if so, whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident." *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998). Instead, Ard, like Pinion, looks to the merits, pointing to plaintiff's inability to meet his burden of proof. *See* Hare, 135 F.3d at 328 ("A public official who attacks a plaintiff's ability to prove her case is not raising a qualified immunity defense, which is conceptually distinct from the merits of the plaintiff's claim.") (quoting *Hart v. O'Brien*, 127 F.3d 424, 454 (5th Cir.1997)) (internal quotation omitted). For this reason, no distinction shall be made, in terms of their respective burdens in achieving summary judgment, between defendants Ard and Pinion.

[6]    The longest time which expired between the time plaintiff executed a complaint and the time he was examined by Dr. Ducote was eight days.

surgical clinic. Based upon later examinations, taking place on September 22, 1997 and October 8, 1997, a referral to the surgical clinic was not warranted.

An examining doctor's referral of a prisoner to a particular clinic located outside a correctional facility, such as a hospital's surgical clinic, does not *ipso facto* mean that the prisoner is suffering from a serious problem warranting immediate specialized medical attention. This court, based upon its experience adjudicating prisoner's medical complaints, takes judicial notice of the fact that such referrals are not unusual when examinations take place in a prison setting where medical resources may be limited. Further, unless designated as serious or as an emergency, such referrals are generally not handled on an expedited basis. There is often a significant lag time between the referral date and the date the prisoner is transported to and seen at the specialized clinic. This lag time is generally attributable not to any deliberate indifference on the part of prison officials, but rather, to a high demand for these specialized appointments and to the inherent security problems associated with the transporting of prisoners in and out of a correctional facility. Thus, plaintiff's medical records, reflecting Dr. Ducote's referrals to Lallie Kemp's surgical clinic, and the time lapse prior to plaintiff's actual transport to Lallie Kemp and prior to surgical intervention, by itself, would likely be insufficient to support a finding of deliberate indifference to plaintiff's serious medical needs. However, as shown below, this court need not rely exclusively upon said medical records.

Offered in support of summary judgment is Dr. Ducote's affidavit in which he attests that in August, 1997, when he referred plaintiff to the surgical clinic and in accordance therewith, a

6

TPJ nurse requested authorization from the USMS, plaintiff's medical condition **"did not constitute a serious medical condition."**[7] Similarly, on September 5, 1997, when he again referred plaintiff to the surgical clinic, Dr. Ducote attests that plaintiff's condition **"did not constitute a serious medical condition."**[8] Further, Dr. Ducote attests that a hemorrhoidectomy, the surgery ultimately performed upon plaintiff, "is considered an elective procedure," not a necessary one warranted in response to a serious medical situation.[9]

Corroborating Dr. Ducote's assessment of plaintiff's condition was the treatment plaintiff received from the emergency room physician on October 23, 1997. Following his examination, the emergency room doctor did not, as would be expected in response to a serious medical condition, expedite matters for the purpose of having plaintiff seen at the surgical clinic to schedule a hemorrhoidectomy as soon as possible. Instead, like Dr. Ducote, the emergency room physician merely referred plaintiff to the surgical clinic, and he prescribed over-the-counter medication, specifically, Preparation H, along with sitz baths and a soft diet.

In opposition, plaintiff "disputes" Dr. Ducote's determination that his condition did not require immediate surgical attention.[10] According to plaintiff, the delay in his treatment, i.e., the

---

[7]    *See* enumerated paragraph 6 of October 8, 1999 affidavit of Dr. Bert Ducote, attached as exhibit A to the Motion for Summary Judgment filed on behalf of defendant William Ard (emphasis added).

[8]    *See* enumerated paragraph 7 of October 8, 1999 affidavit of Dr. Bert Ducote.

[9]    *See* enumerated paragraph 5 of Dr. Ducote's October 8, 1999 affidavit.

[10]    *See* p. 2 of Plaintiff's Memorandum in Opposition to Defendant Warden Randy Pinion's Motion for Summary Judgement [sic].

delay in having him examined by a specialized surgical unit and undergo a hemorrhoidectomy, caused him not only to suffer severe pain, but also resulted in a deterioration of his physical condition.[11]  Plaintiff, however, offers no medical evidence to support his claim.  Further, the existing records refute plaintiff's deterioration hypothesis, since Dr. Ducote, in connection with his initial examinations of plaintiff on August 14th and September 5th, 1997, referred plaintiff to Lallie Kemp's surgical clinic, but deleted such a referral in later assessments, dated September 22nd and October 8th, 1997.

Plaintiff further "disputes" the contention that Warden Pinion did everything within his power to secure proper medical treatment for plaintiff.  According to plaintiff, Pinion "could have ensured that his medical staff notified Dr. Ducote that his orders for Plaintiff to receive care at the surgery clinic were not being followed" and he "could have taken steps on his own...to ensure that Dr. Ducote's orders were followed."[12]  However, the fact that Warden Pinion did not make every conceivable effort to provide plaintiff with the medical care which, in plaintiff's opinion, he should have received, clearly does not constitute deliberate indifference on Pinion's part to plaintiff's serious medical needs.  Accordingly;

---

[11]      *See* p. 2 of Plaintiff's Memorandum in Opposition to Defendant William Ard's Motion for Summary Judgment and p. 8 of Plaintiff's Memorandum in Opposition to Defendant Warden Randy Pinion's Motion for Summary Judgement [sic].

[12]      *See* Plaintiff's Memorandum in Opposition to Defendant Warden Randy Pinion's Motion for Summary Judgment at p. 2.

8

IT IS HEREBY ORDERED that the motion for summary judgment filed on behalf of

Warden Randy Pinion and the motion for summary judgment filed on behalf of William Ard in

his individual capacity are GRANTED.

New Orleans, Louisiana, this _16_ day of _May_, 2000.

*Alma L Chasez*

ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE

9

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

KENNETH BEVLEY              :      CIVIL ACTION

                           :      NUMBER 97-3156 T(5)

VERSUS                     :      JUDGE PORTEOUS

DR. BERT DUCOTE, ET AL.    :      MAGISTRATE JUDGE CHASEZ

## A F F I D A V I T

**BEFORE ME**, the undersigned Notary, personally came and appeared:

## DR. BERT DUCOTE

who, after first being duly sworn, did depose and say that:

1.

I am currently licensed to practice medicine in the State of Louisiana and I have practiced medicine for the past forty (40) years. I work for the State of Louisiana at Lallie Kemp Medical Center at the out-patient clinic. As part of my duties at the hospital, I attend to prisoner's housed at Tangipahoa Parish Jail (TPJ), Monday through Friday in the mornings.

2.

My position at TPJ requires me to examine inmates and to review and evaluate their medical records. At the request of Assistant United States Attorney Sandra E. Gutierrez, I examined Kenneth Bevley's medical records at TPJ.



GOVERNMENT
EXHIBIT
B

3.

Plaintiff Bevley was a federal prisoner housed temporarily at TPJ. As with all federal prisoners, approval needed to be obtained from the United States Marshall Service (USMS) before I could refer Plaintiff to a specialty clinic, such as the surgery clinic.

4.

Approval **does not** need to be obtained from the USMS for emergency situations.

5.

Generally a hemorrhoidectomy is considered an elective procedure and does not constitute an emergency or a serious medical condition.

6.

On August 19, 1997, the nurse at TPJ forwarded via facsimile a request to the USMS for Plaintiff to be sent to the surgery clinic at Lallie Kemp Hospital. I wanted Plaintiff to be seen by a surgeon regarding a hemorrhoidectomy. This was not an emergency situation, Plaintiff's condition did not constitute a serious medical condition.

7.

On September 5, 1997, the nurse at TPJ forwarded via facsimile another request to the USMS for Plaintiff to be sent to the surgery clinic at Lallie Kemp Hospital. This was not an emergency situation, Plaintiff's condition did not constitute a serious medical condition.

8.

On October 23, 1997, the nurse at TPJ forwarded via facsimile a third request to the

USMS for Plaintiff to be sent to the surgery clinic at Lallie Kemp Hospital. This was not an emergency situation, Plaintiff's condition did not constitute a serious medical condition. Despite the non-emergency nature of Plaintiff's medical condition, an appointment with the surgery clinic was approved by the USMS. Therefore an appointment for Plaintiff was arranged at the surgery clinic for November 18, 1997.

9.

On October 22, 1997, I believed Plaintiff needed additional attention for his hemorrhoids because Plaintiff had a thrombosed external hemorrhoid. Some physicians treat a thrombosed external hemorrhoid by lancing to relieve pressure from the blood clot that forms. Therefore, Plaintiff was sent the next day to the emergency room at Lallie Kemp Hospital. However, the emergency room physician did not lance Plaintiff's thrombosed hemorrhoid but prescribed the same treatment he had been receiving at TPJ.

10.

At no time during Plaintiff's tenure at TPJ was Plaintiff's need for a hemmorhoidectomy an emergency.

11.

At no time during Plaintiff's tenure at TPJ was Plaintiff denied adequate medical care.

12.

It is my opinion that Plaintiff did not suffer significant or serious injury as a result of not having a hemorrhoidectomy during his tenure at TPJ.

13.

The above is true and correct to the best of my knowledge, information, and belief.

**DR. BERT DUCOTE**

**SWORN TO AND SUBSCRIBED** before me,

Notary, at Independence, Louisiana,

this 8th day of October, 1999.

NOTARY PUBLIC

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KENNETH BEVLEY** | * | **CIVIL ACTION** |
| **v.** | * | **NUMBER: 97-3156 "T" (5)** |
| **DR. BERT DUCOTE, ET AL.** | * | **JUDGE PORTEOUS** |
| | * | **MAGISTRATE JUDGE CHASEZ** |

* * *

**STATE OF LOUISIANA**
**PARISH OF ORLEANS**

<u>**A F F I D A V I T**</u>

**BEFORE ME**, the undersigned Notary, personally came and appeared:

**WILLIAM J. ARD**

who, after first being duly sworn, did depose and say that:

**1.**

I was employed by the United States Marshals Service (USMS) from June 1992 to June 1999.



**2.**

I served as Jail Liaison Officer between the United States Marshals Service and the Tangipahoa Parish Jail (TPJ) from August 1997 to November 1997.

**3.**

My duties as Jail Liaison Officer included inspecting the jails to ensure that they were in compliance with government regulations. I handled prisoner complaints if the complaints could not be handled within the jail and I reviewed requests for federal prisoners to be sent outside the TPJ for medical treatment.

**4.**

Respective to medical requests which dealt with an outside medical facility, I based my decisions on information provided to me by the responsible medical authority at the jail and in most cases, after discussing medical concerns with a United States Marshals Service supervisor.

**5.**

The USMS policies and procedures respective to inmates being seen at outside medical facilities are based not only on budgetary reasons, but on security concerns as well.

**6.**

In each and every instance that I was contacted by the TPJ medical staff, I was told that Plaintiff's medical condition and his need for a hemorrhoidectomy was not an emergency situation.

- 2 -

**7.**

Based on TPJ's medical personnel's representation of Plaintiff's medical condition, the request that Plaintiff be sent to the surgery clinic was denied as per the U.S. Marshals Service governing policies because Plaintiff's medical condition was not an emergency.

**8.**

The above is true and correct to the best of my knowledge, information, and belief.

_____
**WILLIAM J. ARD**

**SWORN TO AND SUBSCRIBED** before me,

Notary, at New Orleans, Louisiana,

this 8th day of October 1999.

_____
**NOTARY PUBLIC**

- 3 -