```
                                    FILED
                              U.S. DISTRICT COURT
                             EASTERN DISTRICT OF LA

                              2001 FEB 22  AM 11: 49

                              LORETTA G. WHYTE
                                    CLERK
```

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KENNETH BEVLEY | CIVIL ACTION |
| VERSUS | NO. 00-0007 |
| UNITED STATES OF AMERICA | SECTION "T" (5) |

### MOTION FOR LEAVE TO AMEND PLAINTIFF'S OPPOSITION TO DEFENDANTS MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

NOW INTO COURT, through undersigned counsel, comes plaintiff, Kenneth Bevley, who moves this Court for leave to amend his original opposition to defendants Motion to Dismiss and Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure 15(b) for the following reasons:

1.

Counsel has determined that two exhibits referred to in the opposition were inadvertently left out of the memorandum, and now wishes to supplement the opposition with the missing exhibit number (2), and Plaintiff's Original Complaint.

2.

The proposed amendment will cause no delay in the prosecution of the action. No trial date has been set in this matter.

```
DATE OF ENTRY
MAR 5 2001
```



3.

Counsel for plaintiff has advised counsel for all defendants prior to filing the present motion.

4.

A copy of the proposed exhibits are attached and incorporated herein.

**WHEREFORE**, plaintiff prays that he be granted leave to file the missing exhibit number (2) and Plaintiff's Original Complaint, attached.

Respectfully Submitted,

_____
JANE JOHNSON   NO. 7300
CHARLES D. WILLIAMS   NO. 20636
Supervising Attorney
Tulane Law Clinic
6329 Freret Street
New Orleans, Louisiana 70118
(504) 865-5153

Case 2:00-cv-00007-GTP   Document 24   Filed 02/22/2001   Page 2 of 15

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KENNETH BEVLEY | CIVIL ACTION |
| VERSUS | NO. 00-0007 |
| UNITED STATES OF AMERICA | SECTION "T" (5) |

### ORDER

Upon Consideration of Plaintiff's Motion for Leave to Amend Opposition to Defendants Motion to Dismiss and Motion for Summary Judgment,

IT IS ORDERED that the Motion be granted, and that the additional exhibits (2) and Plaintiffs Original Complaint be filed into the record of Kenneth Bevley.

New Orleans, Louisiana this 1st day of March 2001.

_____
U.S. DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I do hereby certify that on this 22 day of February, 2001, I served a copy of the foregoing motion by hand delivery, on counsel to all parties in this proceeding.

*Tamekia Wherry*
Tamekia Wherry

4

INDEX OF EXAMINERS

KENNETH BEVLEY VS. CHARLES C. FOTI, JR., ET AL

DEPOSITION OF WILLIAM JOSEPH ARD

TAKEN ON OCTOBER 8, 1999


EXAMINATION INDEX


                                                    Page, Line

EXAMINATION BY MS. COLEMAN................... 6:16

EXAMINATION BY MR. WILLIAMS............... 51:25

EXAMINATION BY MR. VINCENT................ 52:21

EXAMINATION BY MR. WILLIAMS................ 61:4

EXAMINATION BY MS. GUAJARDO............... 62:25



PLAINTIFF'S EXHIBIT 2

755 MAGAZINE STREET, SUITE 200         AFFILIATED REPORTING TECHNOLOGY, INC.         Ph. (504) 523-3747
NEW ORLEANS, LOUISIANA 70130                OFFICIAL COURT REPORTERS              Fax (504) 522-4777

14

```
 1              that time.
 2                    And a couple of those requests came
 3              in over a period of time.  And it was all
 4              always the same thing, a nonemergency
 5              matter.
 6    Q.        Were you aware that he was bleeding from
 7              his rectum?
 8    A.        I can't say if I'm -- if I can -- I can't
 9              really recollect that.  Okay?  But I just
10              knew he had hemorrhoids and he had a
11              situation.  But that it was determined by
12              the -- by the responsible medical people
13              at the jail that it was a nonemergency, so
14              I went with that information.
15    Q.        So when they would fax you a request,
16              would they include within the fax the
17              actual medical examination or report?  Do
18              you recall?
19    A.        I don't recall.  I'm sure there's
20              paperwork to look at, though.  I mean,
21              it's been a couple years.  I just can't
22              remember.
23    Q.        Do you recall offhand how many requests
24              were made?
25    A.        At least two.  I couldn't tell you.  At
```

15

```
 1              least two that came in from the jail and
 2              then one that happened in court in Judge
 3              Porteous's court.  So I remember three.
 4              Two in writing and one in the courtroom,
 5              kind of a verbal request to have him seen,
 6              to have him checked out.
 7     Q.       Okay.  To your knowledge, what happens if
 8              a marshall were to receive and deny a
 9              surgery request?  And let's say the
10              sheriff went ahead and had the surgery
11              performed, would the marshalls be billed
12              for it?
13     A.       Sure.  Yes.
14     Q.       Okay.  And has this ever happened before,
15              to your knowledge?
16     A.       Not to my knowledge.  I'm sure it has, but
17              I don't have any personal experience to
18              tell you about.
19     Q.       Do you think that the marshalls would go
20              ahead and pay for it if this happened, if
21              they were billed for this?
22     A.       If somehow he was sent by mistake and
23              checked out and the whole bit, yeah.  I
24              think we would have paid for it.
25     Q.       Okay.  Did you, in preparing for the
```

16

1          deposition, did you have a chance to read
2          the medical reports?
3   A.     I didn't read them, no.
4   Q.     I actually have them now.  Is that -- and
5          I can give you a copy.
6              MS. GUTIERREZ:
7                   You can show him anything.  It
8              doesn't matter.  Okay.  This is a
9              fax from September 5th, 1997.
10             THE WITNESS:
11                  Okay.
12             MS. GUTIERREZ:
13                  Ms. Coleman, we can't determine
14             which two pages are the five pages
15             of the fax.
16             MS. COLEMAN:
17                  That's what I was going to ask
18             him exactly.
19             MS. GUTIERREZ:
20                  This purports to be a fax
21             coversheet, would be more accurate,
22             along with four other pages.  If
23             that's what you want to present to
24             him as Exhibit #1 in this
25             deposition, that's fine.

17

```
1    EXAMINATION BY MS. COLEMAN:
2    Q.    Do they normally send you or do you
3          recall, actually, being sent a request for
4          medical attention?
5    A.    That's usually what we're sent.  That
6          looks like the form.
7              MS. GUTIERREZ:
8                   You need to identify that for
9              the record.  That would be a
10             request for medical attention.  Is
11             there a date on it, Ms. Coleman?
12             MS. COLEMAN:
13                  Yeah.  It's dated 9/5/97.
14             MS. GUTIERREZ:
15                  9/5/97.
16             THE WITNESS:
17                  Approval for surgery clinic,
18             hemorrhoids.
19             MS. GUTIERREZ:
20                  The fax says that pages were
21             sent.
22             THE WITNESS:
23                  Probably this coversheet and
24             this page.
25             MS. COLEMAN:
```

18

1        And the medical report.
2    MS. GUTIERREZ:
3        The request for medical
4    attention.
5    MS. COLEMAN:
6        The request for medical
7    attention.
8    THE WITNESS:
9        That is normally something that
10   would be sent, it appears. And
11   this is some billing sheet that is
12   filled out by a lady in our office.
13   I normally probably wouldn't have
14   seen this.
15   MS. GUTIERREZ:
16       That's the --
17   THE WITNESS:
18       From Lallie Kemp Hospital.
19   MS. GUTIERREZ:
20       Outpatient something record.
21   THE WITNESS:
22       In fact. It's -- this is
23   something, I guess, that would be
24   sent to our office to get payment.
25   MS. COLEMAN:

42

```
 1                 it's serious?
 2  EXAMINATION BY MS. COLEMAN:
 3  Q.    Does it sound serious you?
 4  A.    I couldn't tell you.  I'm not sure.
 5  Q.    Was there something you were about to say?
 6  A.    No.  I don't think so.
 7  Q.    Okay.  So if somebody --
 8              MS. GUTIERREZ:
 9                    She was talking about the
10                approval?  Is that it?  He was
11                saying something about he gets
12                approval from a supervisor, Ron
13                Curet, kind of what he was talking
14                about before.
15              THE WITNESS:
16                    This very last time.
17  EXAMINATION BY MS. COLEMAN:
18  Q.    Oh, the very last time?
19  A.    The very last time, after Judge Porteous
20        made a request to us to have him checked
21        out, we had him checked out and we decided
22        at that point, I'm not even sure if it
23        came back that it was an emergency.  We
24        just decided to get it done, based on the
25        judge's request, and we set up the
```

755 MAGAZINE STREET, SUITE 200
NEW ORLEANS, LOUISIANA 70130
AFFILIATED REPORTING TECHNOLOGY, INC.
OFFICIAL COURT REPORTERS
Ph. (504) 523-3747
Fax (504) 522-4777

|    |    |    |
|----|----|----|
| 1  |    | appointment, or an appointment was set up, |
| 2  |    | I should say. But it would have fallen at |
| 3  |    | such a time when he would have been gone |
| 4  |    | by -- the normal course of events. He was |
| 5  |    | going to roll out, because he had been |
| 6  |    | sentenced. He was going to go off to the |
| 7  |    | bureau of prisons. I remember speaking to |
| 8  |    | Ron Curet concerning that, telling him |
| 9  |    | that we had the appointment set up and he |
| 10 |    | made the call to cancel the appointment |
| 11 |    | and to put him on the airplane. |
| 12 | Q. | Okay. |
| 13 | A. | Because he would have not made the |
| 14 |    | appointment, since he was going to roll |
| 15 |    | out. And it was his -- it was his belief |
| 16 |    | that the bureau of prisons was much more |
| 17 |    | inclined to handle this situation. |
| 18 | Q. | Okay. Was Ron Curet aware of every time a |
| 19 |    | request -- Bevley's request was faxed in? |
| 20 |    | To your knowledge. |
| 21 | A. | I'm not sure. It was typical practice, |
| 22 |    | when these requests would come in, these |
| 23 |    | fax sheets with the request for medical |
| 24 |    | attention would come in, I would |
| 25 |    | typically, and in a case like this, go to |

```
                                          U.S. DISTRICT COURT
                                          EASTERN DISTRICT OF LOUISIANA

                                          FILED    OCT 2 [ ] 1997

FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. 1983
                                          LORETTA G. WHYTE
                                                 CLERK

           UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF LOUISIANA
```

KENNETH BEVLEY
(Enter above the full name of the plaintiff in this action.)

CIVIL ACTION
No. 97-3156

versus

Charles C. Foti Jr. And Employee's
Warden Randy Pinion And Dr. Ducote
United States Federal Marshal Office
(Enter above the full name of the defendant or defendants in this action.)

SECTION
SECT. T MAG. 5

## COMPLAINT

I.  Previous Lawsuits

   A. Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment? Yes ( ) No (✓)

   B. If your answer to A is yes, describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

   1. Parties to this previous lawsuit

      Plaintiffs _____

      _____

      Defendants _____

      _____

   2. Court (If federal court, name of the district court; if state court, name the parish.)

   3. Docket Number _____

   4. Name of judge to whom case was assigned _____

DATE OF ENTRY   OCT 24 1997

PLAINTIFF'S EXHIBIT
Original Complaint

- 2 -

5.  Disposition (For example: Was this case dismissed? Was it appealed? Is it still pending?) _____

6.  Approximate date of filing lawsuit _____

7.  Approximate date of disposition _____

II. Place of Present Confinement  TANgipAhoA PArish JAil, Amite, LA.

A.  Is there a prisoner grievance procedure in this institution? Yes (✓) No ( )

B.  Did you present the facts relating to your complaint in the state prisoner grievance procedure? Yes (✓) No ( )

C.  If your answer is YES,

 1.  What steps did you take?  I SENT iN SicK-CAll Request ANd Also INmAte's GrievANce Form's At both JAil

 2.  What was the result?  O.P.P. SAid it wAs Not A GrievANce. IN TANgipAhoA JAil Dr. Ducote SAid the U.S.M. refused to let me be seNt to the hospitAl

D.  If your answer is NO, explain why not _____

E.  If there is no prison grievance procedure in the institution, did you complain to prison authorities? Yes (✓) No ( )

F.  If your answer is YES,

 1.  What steps did you take?  I told the Authorities whAt reAsoN the Dr. gAve me About the U.S.M. refusAl

 2.  What was the result?  They SAid the oNly wAy I could go get X-rAys ANd treatment is if the U.S.M. Approved it ANd that they would mAke the request to them AgAiN

III. Parties

(In item A below, place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.)

A. Name of plaintiff  KENNeth Bevley
   Address  P.O. Box-250 / Amite, LA. 70422

- 3 -

(In item B below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use item C for the names, positions, and places of employment of any additional defendants.)

B. Defendant Charles C. Foti Jr. is employed as NEW ORLEANS criminal Sheriff And N. Terrebonne Warden at Orleans-Paris-C-C-C-Templeman-

C. Additional Defendants Warden Randy Pinion And Dr. Ducote Tangipahoa Parish Jail - Amite, LA. 70422 And The United States Marshal Office Hale Boggs Federal Building 500 Camp St. New Orleans, LA. 7013

IV. Statement of Claim

(State here as briefly as possible the facts of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach extra sheet if necessary.)

On or About-4-19-97, the Dr. order A hight Fiber Diet For me, And reordered it Again on or About-5-6-97 I Sent in A Grievance Each time and did not get A response until I Sent in Another one on or About-6-2-97 the Anwser came to me on-6-12-97 that stated my complant was not Grievable. After that I was transferred to Tangipahoa Parish Jail I told them About my promble of bleeding coming From my rectom And the Dr. put in A Order for me A Diet, And Fiber Lax power And to be Sent to the hospital for treatment, but was refused by The Marshal Office